owner of the stock; as so modified the judgment is affirmed, respondent to recover costs.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing was denied November 27, 1942, and appellant's petition for a hearing by the Supreme Court was denied December 22, 1942.

[Civ. No. 12154.   First Dist., Div. One.   Oct. 28, 1942.]

RUTH A. WILLIAMS, Appellant, v. HARRY RYAN et al., Respondents.

H. J. Kleefisch for Appellant.

Jensen & Holstein for Respondents.

PETERS, P. J.—Plaintiff brought this action for declaratory relief for the purpose of having determined her rights under a contract dated May 10, 1930, by which defendant Harry Ryan sold to plaintiff a parcel of real property for the sum of $850. Defendant Harry Ryan and his wife, who was joined as a codefendant, by their answer and amended cross-complaint admitted the execution of the contract, but alleged that under the terms thereof there was due and owing on the purchase price, plus interest, and taxes, $1,267.07, and, further, that defendants were entitled to a reasonable attorney's fee of $250, for which judgment was asked. After a trial before the court without a jury, the court determined that $695 was due on the purchase price, $374.49 as interest, $35.96 for taxes and $250 as attorney's fees, and rendered its judgment in favor of defendant in the amount of $1,355.45. From that judgment plaintiff prosecutes this appeal.

The evidence shows that defendant Harry Ryan owns a subdivision in the Santa Cruz Mountains known as Mountain Springs. On May 10, 1930, Ryan entered into a contract with plaintiff, which is a form contract prepared by Ryan, by the terms of which he agreed to sell to plaintiff an unimproved lot in that subdivision for $850, $100 on execution of the agreement "receipt whereof is hereby acknowledged,"

the balance payable in monthly installments of $15 each, payable on the 10th day of each month starting June 10, 1930, with 7 per cent interest on the unpaid balance. The buyer agreed to pay all taxes. The form provides that the agreement is "subject to" certain "conditions, restrictions and reservations," among which are that the seller reserves all water rights, and that the "title to each lot in Mountain Springs carries with it one share of stock in the Mountain Springs Water Association. A charge of Ten ($10.00) Dollars will be made for water connection from street main to property line. Water will be piped for household purposes only"; that the buyer is entitled to immediate possession; that in the event "suit is commenced by the Seller against the Buyer for any cause arising out of this agreement, the Buyer hereby promise[s] to pay to the Seller a reasonable attorney's fee . . ."

There is no dispute that, when this contract was entered into, Ryan knew that plaintiff intended to build a house on the property, and that the property was purchased for that purpose. Plaintiff took possession and immediately started construction of a log cabin. She testified that over a period of time she expended between $2,200 and $2,500 on improving the property, defendant admitting that he had assisted in several respects in the construction of the house. Over a period of time the plaintiff paid to defendant $155 in installments on the purchase price, the last payment being made on December 31, 1931. Although the contract acknowledged receipt of $100 upon the execution of the agreement, it is admitted that such sum was not then paid, plaintiff testifying that she gave a promissory note in that sum to Ryan in lieu of the cash. Plaintiff testified the note had been paid by her husband. Defendant denied the note had been paid and produced the uncancelled note. The trial court found it had not been paid. That finding is supported by the evidence.

After the cabin was constructed, a dispute arose concerning the quality of the water in the area. There was no water piped to plaintiff's premises. There was a pipe and a faucet on the adjoining lot from which plaintiff was permitted by defendant to secure water. Plaintiff complained that the water was not palatable. Plaintiff testified that on many occasions she offered to pay the balance due on the contract if water fit for human consumption were delivered to

the premises. Several witnesses called on her behalf corroborated this testimony. Defendant denied that such a tender had been made, and the trial court found in accordance with defendant's testimony. But defendant did not deny that plaintiff had complained of the quality of the water, and that he had admitted that the pipes were broken and that the water tasted of sulphur. It is undisputed that no water connection was ever made on plaintiff's lot. It is also undisputed that no water company existed, defendant owning all the water rights, he testifying that, after the forty-five lots in the subdivision were sold and paid for, he intended to convey a proportional interest in the water rights to each landowner.

The record shows, without contradiction, that the first argument over the water occurred in January, 1931. In 1932 these arguments had reached such a stage that plaintiff refused further payments until palatable water was delivered. In July of 1932 defendant Ryan removed the faucet on the adjoining premises so that plaintiff had no water at all in or near her premises. Thereafter, all water used by plaintiff had to be conveyed to the premises for a considerable distance.

█ Appellant urges that, under the contract, respondent was obligated to furnish a water connection to the premises, and that his failure to do so constituted a material breach of the contract which excused her from making further payments until the connection was made, and estopped the defendant from asserting a right to further payments of principal or interest until he had performed. With this contention we agree. The trial court found that under the contract the defendant was not obligated to make the water connection until the $10 fee was paid, and also found that no tender of that amount had been made. That is not a reasonable or proper construction of the contract. This contract was prepared by respondent and must be interpreted most strongly against him. It provides that the seller reserves all water rights; that "water will be piped for household purposes only"; and that "a charge of Ten ($10.00) Dollars will be made for water connection from street main to property line." Respondent knew of appellant's need for the water. He knew the house had been completed and was being used. Yet at no time did he offer to make a water connection to the premises. Reasonably construed, the payment of the ten-dollar fee was not a condition precedent to

the contract right to have the connection made. It seems quite clear to us that it was the intent of the parties that, when needed, the connection would be made by the seller, and the $10 added to the other sums due under the contract. The payment of the $10 fee was no more a condition precedent to the right to the water connection, than was the payment of the full purchase price a condition precedent to the right of appellant to construct a home on the premises. Obviously, under the contract, the connection was to be made within a reasonable time after the need therefor arose.

It cannot be successfully argued that the covenant to make the water connection was an independent covenant. The covenant to pay the installments and the covenant to make the connection were concurrent covenants, the connection to be made within a reasonable time after the need therefor arose. Nor can it be successfully urged that the covenant to make the water connection was subordinate and incidental to the main purpose of the contract. Obviously, the making of the connection was a material and essential part of the consideration supporting appellant's promise to pay the purchase price. It was a major and integral part of the consideration for the whole contract.

During the trial, appellant offered to pay to respondent $605 for a deed to the property and the promised share of stock. Upon the refusal of the tender, this sum was deposited in court. This sum was computed by taking the purchase price, $850, deducting therefrom the $100 represented by the note, the $155 paid on account, and adding the $10 for the water connection. This was an insufficient tender. It excluded the note for $100 which the court found was unpaid, and excluded any sum for taxes, admittedly payable by appellant. However, if appellant makes a proper tender including these omitted sums she is entitled to the deed and share of stock.

It should also be mentioned that during the trial appellant attempted to show that the water supply for the subdivision was so located that septic tanks connected with some of the houses in the subdivision drained towards and into the water tank, rendering the water unfit and dangerous for domestic use. The trial court sustained respondent's objection to such testimony, stating that: "Unsanitary water, I think that is up to the Board of Health." This was clearly an erroneous ruling. Water, and palatable water,

was indispensable for the use of the lot for the purpose for which it was purchased. If palatable water was not available, appellant was entitled to rescind. If she desires to rescind, however, she cannot keep possession of the premises. She must elect whether she desires to rescind for such breach (if such breach is found to exist) or whether she desires to tender the full sum due, including the $100 note, the $10 connection fee, and the taxes, without interest.

The judgment appealed from is reversed with instructions to the trial court to declare the rights of the parties in a manner not inconsistent with the views herein expressed.

Knight, J., and Ward, J., concurred.